IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TYLER WAYNE NEES**, | Case No. 2:24-cv-1762-SI |
| Plaintiff, | **ORDER** |
| v. | |
| **WARREN ROBERTS**, **R. HALLADAY**, **JOSEPH BUGHER**, **W. REED**, and **JOHN /JANE DOES 1-20**, | |
| Defendants. | |

**Michael H. Simon, District Judge.**

Plaintiff Tyler Wayne Nees ("Nees") brings this case against Oregon Department of Corrections Chief Medical Director Dr. Warren Roberts, Assistant Director of Health Services Joseph Bugher, and two Health Services employees, R. Halladay and W. Reed. Nees alleges that on December 5, 2022, the same day that he received notice that a different lawsuit filed in this Court, *Nees v. Maney*, 2:22-cv-1874-SI, was accepted by the Court, Reed forced Nees to take a "toxic mixture" of medications that was not Nees's normal medication. Nees contends the medication caused a near-fatal heart incident, which left him with permanent heart damage, pain

PAGE 1 – ORDER

and suffering, and emotional distress. He asserts that hours after taking the medication he collapsed and was taken to the emergency room and then was taken by a life flight for further emergency treatment. He states that upon his return he requested that his blood be tested to prove that the "toxic" medication was the cause of his collapse, but his demands were not followed. He brings claims pursuant to 42 U.S.C. § Section 1983 for violations of his constitutional rights under the First, Eighth, and Fourteenth Amendments.

Defendants answered the Complaint. Nees moved for summary judgment and appointment of counsel. Nees argued that there is no dispute for trial because he filed his separate lawsuit in *Nees v. Maney*, he received notice it was accepted by the Court, that same day he was forced to take a "toxic mixture" of medication, he had his near-fatal heart incident as a result, and he has continued to suffer physical and emotional issues. Defendants responded, arguing that summary judgment is premature because there are many outstanding issues of fact, particularly unknown factual questions regarding the causation of Nees's heart condition and a lack of specific facts asserted relating to each defendant, as required under § 1983. Defendants contend that at a minimum this case will need expert testimony, either by a pharmacist, medical doctor, or both. Defendants state that they intend to obtain expert testimony and will share the results, as much as legally possible, with Nees.

Defendants explain:

> We hope to get to the objective truth in this case and, if it favors Plaintiff, then ADR will make sense. If the truth is that there was no harm to Plaintiff and/or no breach of a duty by any Defendant, then we will present that information to Plaintiff [to] assuage his concerns. We will also accept reasonable follow-up questions or disagreements that Plaintiff may have with our expert(s)' findings. Plaintiff's questions or disagreements will be presented to the experts and we will get a substantive response to Plaintiff. We understand that he is at a resource disadvantage, so we will do our best to the extent possible to play the cards face-up.

PAGE 2 – ORDER

ECF 21 at 2. Instead of filing a reply, Nees filed a separate motion for appointment of counsel or for alternative dispute resolution. Thus, both his motion for summary judgment and his motion for volunteer pro bono counsel or alternative dispute resolution are pending before the Court.

**A.  Motion for the Appointment of Counsel**

Plaintiff has twice moved for counsel and the Court has denied those motions. *See* ECF 3, 9 (motions), 6, 12 (orders). In his new motion for counsel, Nees argues that he needs counsel because he is unable to obtain discovery of his medical records because Defendants are "play[ing] paperwork games." He states that he is being asked to provide HIPAA release forms for each provider when he has already provided a release to the Department of Justice and he does not even know who treated him and thus cannot provide specific release forms.

Defendants treat Nees within the prison system and have third parties treat Nees when they are unable to provide the necessary treatment. It would seem that Defendants would (or could) obtain those outside treatment records as part of their need to provide adequate follow-up treatment of Nees, and thus the records could be considered in the custody or control of Defendants and subject to a document request by Nees. To the extent Defendants are unable directly to obtain those treatment records, it is within their knowledge where the records exist. Thus, counsel for Defendants is instructed to prepare any necessary additional release forms, if any, have Nees sign them, obtain the documents, and produce any relevant medical records not currently within the possession, custody, or control of Defendants.

Generally, however, there is no constitutional right to counsel in a civil case. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986). The Court has discretion under 28 U.S.C. § 1915(e)(1) to appoint volunteer counsel for indigent civil litigants in *exceptional* circumstances. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). Although the Court may appoint

PAGE 3 – ORDER

volunteer counsel in exceptional cases, it has no power to make a mandatory appointment. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 301-08 (1989), *superseded by statute on other grounds*.

In determining whether exceptional circumstances exist, a court evaluates the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his or her claim *pro se* in light of the complexity of the legal issues involved. *Palmer*, 560 F.3d at 970; *Agyeman*, 390 F.3d at 1103. However, "[n]either of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel under [former] section 1915(d)." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

The Court finds that at this stage of the litigation that Nees sufficiently is able to articulate his claims considering their current level of complexity. *See Siglar v. Hopkins*, 822 F. App'x 610, 612 (9th Cir. 2020) (holding that the self-represented plaintiff's case did not present "exceptional circumstances" warranting appointment of counsel, and explaining that "a litigant must meet a high bar to show that the legal issues involved are sufficiently complex, and that he is therefore impeded in his ability to present his case"). Given Defendants' commitment to obtain on or more experts and to share the results with Nees, the Court finds it premature to appoint counsel at this time. Currently, even if Nees will face certain challenges in pursuing and presenting his case, Nees's "circumstances [are] not exceptionally different from the majority of the challenges faced by [self-represented] litigants." *Id.* The Court recognizes, as articulated by Defendants, that this may change if the evidence and circumstances change as this case proceeds.

The Court also has concerns at this stage of the litigation whether the likelihood of success of Nees's claims is enough to show that his case is "exceptional" and warrants the

appointment of pro bono counsel. *See Fierro v. Smith*, 2022 WL 2437526, at *2 (9th Cir. July 5, 2022) (unpub.) (holding that the district court did not abuse its discretion in declining to appoint pro bono counsel "earlier in this case," and explaining that "[i]t was not necessarily clear that [the self-represented plaintiff's] claims had potential merit until after summary judgment"). Again, this finding takes into consideration Defendants' commitment to obtain an expert or two and share the results with Nees. The Court may revisit its conclusion after that information is obtained. The Court thus denies without prejudice Plaintiff's motion for volunteer pro bono counsel.

Regarding Plaintiff's motion for alternative dispute resolution, the Court previously explained in denying Plaintiff's motion for a settlement conference, that Local Rule 16-4(e)(2)(B) provides for settlement conferences only upon joint request by the parties, not a request by a single party. *See* ECF 12. Additionally, although other forms of alternative dispute resolution generally may be a beneficial practice at some point during litigation, the Court generally does not order the parties to participate in such proceedings. Defendants, however, have stated that depending on the information from the expert analysis, Defendants may voluntarily engage in alternative dispute resolution. The Court denies this aspect of Nees's motion as well.

**B. Motion for Summary Judgment**

Nees moves for summary judgment, arguing that there are no issues of fact regarding his claims. The Court disagrees. Nees fails to meet his burden at summary judgment.

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden,

PAGE 5 – ORDER

"the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Ninth Circuit further instructs that "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules. *Pro se* inmates are, however, expressly exempted from this rule." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted). For a *pro se* inmate, courts "should avoid applying summary judgment rules strictly." *Id.* "This rule exempts *pro se* inmates from *strict* compliance with the summary judgment rules, but it does not exempt them from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (emphasis in original). The exception for *pro se* inmates does "not entirely release [an inmate] from any obligation to identify or submit some competent evidence supporting his claim." *Id.*

As the plaintiff who will have the burden of proof at trial and who is also the moving party at summary judgment, Nees must "affirmatively demonstrate that no reasonable trier of fact could find other than for [him]." *See Soremekun*, 509 F.3d at 984. Construing his filings liberally, the only evidence offered by Nees is his conclusory assertion that because he took a suspicious medication "mixture" that he "questioned" a few hours before his heart incident, and

his blood was not adequately tested, the medication must be the cause of his heart problems. Further, he insists that because the medication was "forced" several hours after he received a notification that his lawsuit was filed, it must have been in retaliation for that lawsuit. These are broad conclusory leaps, without any evidence.

The leap of causation of his heart condition is simply too speculative. Causation of this type requires some medical evidence. He offers no medical record, no medical expert, and nothing to even indicate that his particular heart condition could have been caused by medication (as opposed to from a genetic condition, a virus, or a condition that had deteriorated over time).

His retaliation inference also is too speculative. He offers no evidence that Reed or any other defendant knew about Nees's other lawsuit or knew that it had been assigned a case number and a judge. Additionally, he offers no explanation for why the simple filing of a lawsuit would trigger such lethal retaliation. There is only one court document that was mailed in December 2022 and that he could have received on December 5, 2022. It is a standard form notice that the case had been assigned to the undersigned judge and providing contact information. *See Nees v. Maney*, 2:22-cv-1874-SI, ECF 4, Civil Case Assignment Order (Dec. 2, 2022). It is routine in every civil case. That case had not yet undergone *sua sponte* review to see if he had sufficiently stated a claim, had not had a case schedule set, had not been served or survived a motion to dismiss, and had not survived a motion for summary judgment. It was a notice about the earliest possible stage of a lawsuit—its case assignment. Given the significant volume of lawsuits filed by inmates and the number that are dismissed either *sua sponte* by courts or through motion practice, it strains credulity to assert that prison staff would lethally respond to the simple filing of a lawsuit, let alone that multiple prison staff were involved in a conspiracy to do so, absent some evidence in support.

Nees also offers nothing more than speculation regarding a conspiracy, and much more evidence is required. In *Vieux v. East Bay Regional Park District*, the Ninth Circuit upheld summary judgment in favor of the defendants because the plaintiff was unable to provide specific evidence that the defendants agreed among themselves to act against the plaintiff for an unlawful purpose. 906 F.2d 1330, 1343 (9th Cir. 1990). The plaintiff in *Vieux* provided evidence of "correspondence or discussions" between the defendants, but it was insufficient because no "illegal objective" was demonstrated. *Id.*; *see also Armstrong v. Reynolds*, 22 F.4th 1058, 1085 (9th Cir. 2022) ("When pleading a claim for civil conspiracy, a plaintiff must plead with particular specificity as to the manner in which a defendant joined in the conspiracy and how he participated in it." (quotation marks omitted)). Here, Nees does not offer any evidence that any Defendant communicated with mailroom staff to learn about the court notice, let alone that then all four formed the illegal objective to poison Nees. He must provide evidence that shows with specificity how each defendant was a member of the alleged conspiracy and that they formed the objective to harm Nees. Because he fails to show causation, retaliation, and conspiracy, the Court denies without prejudice Nees's motion for summary judgment.

The Court DENIES WITHOUT PREJUDICE Plaintiff's motion for summary judgment, ECF 18, and his motion for appointment of counsel or alternative dispute resolution, ECF 24.

**IT IS SO ORDERED.**

DATED this 7th day of March, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 8 – ORDER